IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

**AMERICAN FAMILY HOME**
**INSURANCE COMPANY**                                                          **PLAINTIFF**

v.                                        Case No. _____

**SHARON HEIMBACH &**
**JPMORGAN CHASE BANK, N.A.**                                           **DEFENDANTS**

## COMPLAINT IN INTERPLEADER

Comes the Plaintiff, American Family Home Insurance Company ("American Family"), by and through its attorneys, Munson, Rowlett, Moore & Boone, P.A., and for its Complaint in Interpleader, states as follows:

### A. Jurisdiction and Venue

1. This is an action to determine the individual or individuals who are entitled to the proceeds of a manufactured homeowner's insurance policy issued by American Family to Robert Heimbach on a dwelling located at located at 4935 Paul Road, Harrison, Arkansas 72601. Specifically, American Family seeks the assistance of the Court in determining those persons or entities who are entitled to $15,990.60 in insurance benefits accruing as the result of storm damage to the roof and the interior of the home (the "storm claim").

2. The loss that resulted in the storm claim occurred on an uncertain date but, admittedly, during a time that American Family provided coverage for the dwelling. The two parties currently making claim to such insurance proceeds are the named Defendants, Sharon Heimbach and JPMorgan Chase Bank, N.A. ("JPMorgan"). American Family files the current interpleader action seeking to have the Court determine whether Mrs. Heimbach or JPMorgan is entitled to the proceeds of the storm claim.

3. Upon information and belief, Robert Heimbach was the owner of the manufactured home located at 4935 Paul Road in Harrison. Mr. Heimbach died in Pollock, Louisiana, on January 26, 2018. Prior to moving to Louisiana shortly before his death, Mr. Heimbach was a resident of the State of Arkansas, who lived at the home located at 4935 Paul Road in Harrison. To the best of American Family's knowledge, Mr. Heimbach died intestate and no administrator has been appointed on behalf of his estate.

4. At the time of his death, Mr. Heimbach was married to Mrs. Heimbach, who, is currently a resident of Louisiana, residing at 534 E. Meade Road, Pollock, Louisiana 71467. Prior to her relocation to the State of Louisiana, Mrs. Heimbach was also a resident of the home located at 4935 Paul Road in Harrison.

5. Based upon the information known to it at this time, American Family believes that, as of Mr. Heimbach's death, Mrs. Heimbach was the only person who could make a claim to any insurance proceeds owed to Mr. Heimbach or his estate pursuant to Arkansas or Louisiana intestacy law. To the extent that other potential beneficiaries of Mr. Heimbach's estate exist, American Family is not aware of the them.

6. JPMorgan held a mortgage on the property located a 4935 Paul Road in Harrison. Upon information and belief, JPMorgan is a national banking association with its main office located at 1111 Polaris Parkway, Columbus, Ohio 43240. Pursuant to 28 U.S.C. § 1348, a national bank is a citizen of the state in which its main office, as set forth in its articles of association, is located. *Wachovia Bank, N.A. v. Schmidt*, 546 U.S. 303 (2006). JPMorgan is therefore a citizen of Ohio for diversity purposes. Its registered agent for service of process is CT Corporation System, 4400 Easton Commons Way, Suite 125, Columbus, Ohio 43219

7. American Family is a Florida corporation and has its principal place of business in Amelia, Ohio. American Family is therefore a citizen of Florida and Ohio for diversity purposes under 28 U.S.C. § 1332(c)(l).

8. Jurisdiction is proper with the Court pursuant to 28 U.S.C. § 1335 on the basis that this lawsuit involves a policy of insurance providing coverage in an amount in excess of $500.00 and two or more potential claimants of diverse citizenship, Mrs. Heimbach and JPMorgan. Venue is proper pursuant to 28 U.S.C § 1391 on the basis that a substantial part of the events or omissions giving rise to the claim occurred within this judicial district and the property that is the subject of the action is situated within the district.

## B. Factual Background

9. American Family issued a series of Homeowners Policies for Manufactured Homes, policy number 0700045950155, to Robert Heimbach. (Exhibit A, Insurance Policy.) The policies provided coverage for a manufactured home located at 4935 Paul Road, Harrison, Arkansas 72601. (Ex A.) The last of the policies terminated in August 2018. (Ex. A.)

10. The policies designated Mr. Heimbach as the sole named insured but also designated JPMorgan as a lienholder in the declarations pages.

11. The polices provided a maximum of $107,000.00 in dwelling coverage, $10,700.00 in other structure coverage, and $53,500.00 in personal property coverage. ( Ex. A.)

12. While the policies were in place, in the June 2018, JPMorgan notified American Family that it had performed an inspection of the insured home and determined that it was vacant. In July 2018, Dimont & Associates, LLC ("Dimont"), an agent of JPMorgan, presented a claim for damage to an external air conditioner located at the premises. American Family investigated the claim and ultimately made payment for the loss to "Dimont in Trust for JPMorgan Chase, N.A. ISAOA ATIMA for the account of Robert D. Heimbach."

13. During the course of its investigation, American Family determined that the home was, in fact, vacant and, more significantly, that it had sustained roof damage to the exterior of the premises from a storm occurring at some prior unknown date. Although American Family determined that the home had suffered roof damage and inquired as to whether Dimont wanted to present a separate claim on JPMorgan's behalf, Dimont declined to do so at that time.

14. Following the original claim, American Family's coverage terminated in August 2018.

15. Also following that time, JPMorgan instituted foreclosure proceedings on the dwelling and acquired title to the property via a February 6, 2019, foreclosure sale. JPMorgan subsequently conveyed the property to the Secretary of the Department of Veterans Affairs by way of special warranty deed on March 1, 2019, for an unknown amount of consideration.

16. After the foreclosure sale was concluded, on February 19, 2019, Sharon Heimbach contacted American Family to report a claim for roof damage, which Mrs. Heimbach reported having arisen from a storm that occurred in December 2017. The loss was assigned claim number 505267AA.

17. American Family performed an inspection in response to Mrs. Heimbach's claim and prepared an estimate of the damage. American Family did not question its obligation to provide coverage for the storm claim because it knew from its prior inspection in the summer of 2018 that the roof had sustained damage while the policy was in force.

18. Although American Family knew it was obligated to make payment for the loss resulting from the storm claim, however, it had some question regarding the extent to which the foreclosure action and subsequent conveyance to the Secretary of the Department of Veterans Affairs may have impacted the parties to whom payment should be made.

19. The issue was further complicated when, in April 2019, Dimont, on behalf of JPMorgan, presented a claim for the same roof damage, alleging it occurred from an April 2018 storm. That claim was assigned claim number 513433AA. When it presented its claim, Dimont again requested that any payments be made to it for the account of Robert D. Heimbach.

20. In light of the two competing claims, American Family contacted Dimont on several occasions to determine whether, following the foreclosure sale and conveyance of the premises to the Secretary of the Department of Veterans affairs, JPMorgan claimed a right to a deficiency or whether those two transactions satisfied JPMorgan's mortgage interest in full. (Exhibit B, Correspondence to Dimont.)

21. The rationale for the inquiry was American Family's belief that, under Arkansas law, a mortgagee could only retain so much of the insurance proceeds as were needed to cover his or her interest in the insured property. *Wilbanks & Wilbanks, Inc. v. Cobb*, 269 Ark. 936, 601 S.W.2d 601 (1980). American Family believed that, had JPMorgan's mortgage interest been satisfied by the two transactions, any amounts due for the storm loss would be payable to Mr. Heimbach or his estate. This is because, generally speaking, even if, following a loss, a foreclosure ultimately occurs in which the insured loses all right and title to the damaged insured property, an insured will still have a claim for the damage that he or she sustained prior to the foreclosure. *State Farm Fire & Cas. Co. v. Andrews*, 363 Ark. 67, 210 S.W.3d 896 (2005).

22. Although Dimont responded to at least some of American Family's requests for information, it never confirmed whether a deficiency continued to exist following the transfer of the property to the Secretary of the Department of Veterans affairs, making it difficult if not impossible for American Family to determine the extent of JPMorgan's interest, if any.

23. Also, Sharon Heimbach failed to respond to a number of specific requests for information, including requests for information regarding whether an administrator would be

appointed on behalf of her husband's estate and whether she believed that JPMorgan had a valid interest in the premises, entitling it to a portion of the insurance proceeds. (Ex. B.)

24. For the foregoing reasons, American Family knows it owes insurance proceeds arising from the storm loss but cannot determine to whom the proceeds of the storm loss should be paid. It seeks to interplead those proceeds into the registry of the Court to have the Court determine the appropriate payee or payees for the loss. According to American Family's most recent estimate, the actual cash value of the loss was $16,490.60. After application of a $500.00 deductible, the amount payable under the terms of the policy is $15,990.60, and it is this amount that American Family seeks to interplead. (Exhibit C, Roof and Interior Damage Estimate.)

### C.     Request for Interpleader

25. In the instant matter, American Family concedes that it is required to pay $15,990.60 as a result of the storm loss that occurred on an unspecified date but which was discovered while the American Family policy was in place during the summer of 2018. This amount reflects the actual cash value estimate of the damage after application of a $500.00 deductible. American Family does not believe it owes the higher replacement cost estimated value because neither Mrs. Heimbach nor JPMorgan continue to have any interest in the insured premises and, as a result, cannot replace or repair the damage to the insured home, which is required under the policy for replacement cost coverage to be available. (Ex. A.)

26. Although American Family concedes it owes the foregoing amount, because multiple claimants have come forward and neither have supplied information which would allow American Family to fully determine its coverage obligations, American Family has no way of determining to which of the claimants payment should or could be made while complying with the terms of its policy.

27. Prior to filing the current interpleader, American Family contacted both Dimont and Mrs. Heimbach to explain its dilemma and repeatedly asked Dimont to clarify whether JPMorgan could claim a deficiency entitling it to additional recovery after the foreclosure sale and subsequent transfer of the property to the Secretary for the Department of Veterans Affairs. (Ex. B.)

28. Despite advising both Mrs. Heimbach and Dimont of the need for such information in order to determine who it should pay, neither Mrs. Heimbach nor Dimont have ever provided information which would allow American Family to determine its coverage obligations.

29. To ensure that American Family makes proper payment for the storm loss, it seeks to interplead the $15,990.60 that it concedes it owes into the Registry of the Court and requests that the Court make a determination as to those parties who are entitled to the insurance proceeds properly payable due to the loss.

30. American Family additionally seeks an order discharging it from any additional responsibility pursuant to the Homeowner's Policy for Manufactured Homes it issued to Robert Heimbach for damages sustained due to storm loss and requiring that the individual or individuals deemed entitled to payment as beneficiary or beneficiaries sign an appropriate release.

31. Finally, American Family seeks to recover its costs and attorney's fees associated with instituting the Interpleader portion of this action.

WHEREFORE, Plaintiff American Family Insurance Company respectfully requests that it be allowed to interplead the insurance proceeds made available as a result of the storm loss into the Registry of the Court; that the Court make a determination regarding the those individuals or entities which are entitled to benefits arising from that loss under the terms of the policy; that an Order be entered discharging American Family of any further liability arising from the storm loss and requiring those parties deemed entitled to payment to sign an appropriate release; that

American Family recover its costs and attorney's fees associate with the interpleader claim; and that American Family be given any and all other relief to which it is entitled.

>Respectfully submitted,
>
>MUNSON, ROWLETT, MOORE & BOONE, P.A.
>1900 Regions Center
>400 West Capitol Avenue
>Little Rock, Arkansas 72201
>Telephone: (501) 374-6535
>Facsimile: (501) 374-5906
>Shane.strabala@mrmblaw.com
>
>BY: _____
>SHANE STRABALA, AR BIN 2000080
>*Attorney for American Family Home Insurance Company*